UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHRISTOPHER LACCINOLE, <br><br> Plaintiff, <br><br> v. <br><br> DIVERSIFIED CONSULTANTS, INC. and DOES 1-10 INCLUSIVE, <br><br> Defendant. | C.A. No. 1:19-CV-00149-MSM-LDA |

**MEMORANDUM AND ORDER**

Mary S. McElroy, United States District Judge.

This matter comes before the Court on the defendant, Diversified Consultants, Inc.'s ("DCI"), Motion to Dismiss the plaintiff, Christopher Laccinole's twenty-two separate Complaints against DCI for allegedly improper debt-collection telephone calls. (ECF No. 9.) The Court will consider whether Mr. Laccinole's exercise of filing a new Complaint after nearly every call that DCI made to him is impermissible claim splitting.

For the following reasons, the Court GRANTS IN PART and DENIES IN PART, without prejudice, DCI's Motion to Dismiss.

I.     BACKGROUND

Mr. Laccinole filed twenty-two Complaints, *pro se*,[1] in Rhode Island state

---

[1] Mr. Laccinole subsequently retained counsel and currently is represented.

1

district court against DCI, a debt-collection company, arising from twenty-six debt-collection telephone calls DCI allegedly had made to him. (ECF Nos. 1-2 to 1-23.) In each Complaint, Mr. Laccinole avers that he did not owe the debt to DCI. *Id.* He asserts he had sent DCI a letter via certified mail, on October 13, 2016, stating that "[a]ll calls are inconvenient …. Please don't call me." *Id.* Nevertheless, he alleges, DCI called him twenty-six times from December 27, 2018, to January 28, 2019. *Id.* Beginning with his seventh Complaint, Mr. Laccinole added the allegation that he sent another letter via certified mail, on December 31, 2018, which DCI signed for on January 5, 2019, again requesting that DCI make no calls to him. (ECF No. 1-8 ¶¶ 38-41.) In his twenty-second Complaint, he added the allegation that he sent another such letter to DCI on January 25, 2019, signed for by DCI on January 28, 2019. (ECF No. 1-23 ¶¶ 45-47.)

Each Complaint relates to a single telephone call with the exception of four Complaints that assert two calls each. Mr. Laccinole alleges that these calls were in violation of the following statutes:

- Fair Debt Collection Practices Act, 15 U.S.C. § 1692
- Telephone Consumer Protection Act, 47 U.S.C. § 227
- Rhode Island Fair Debt Collection Practices Act, R.I.G.L. § 19-14.9-2
- Rhode Island Deceptive Trade Practices Act, R.I.G.L. § 6-13.1-2
- Rhode Island Right to Privacy, R.I.G.L. § 9-1-28.1
- Florida Consumer Collection Practices Act, Fla. Stat. § 559.55(8)[2]

Mr. Laccinole filed a Complaint in state district court shortly after nearly each DCI call, sometimes within minutes or hours, as demonstrated by the following table:

---

[2] DCI maintains its headquarters in Jacksonville, Florida, and is incorporated in that state.

|    | Complaint No.    | DCI Call Made          | Complaint Filed       |
|----|------------------|------------------------|-----------------------|
| 1  | 4CA-2019-00007   | 12/27 and 12/28/19     | 12/29/18              |
| 2  | 4CA-2019-00008   | 12/31/18 (10:03 a.m.)  | 12/31/18 (10:15 a.m.) |
| 3  | 4CA-2019-00011   | 1/2/19 (no time given  | 1/2/19 (5:41 p.m.)    |
| 4  | 4CA-2019-00014   | 1/2/19 (6:31 p.m.)     | 1/3/19 (9:20 a.m.)    |
| 5  | 4CA-2019-00015   | 1/3/19 (10:55 a.m.)    | 1/3/19 (11:21 a.m.)   |
| 6  | 4CA-2019-00033   | 1/4/19 (12:45 p.m.)    | 1/4/19 (1:01 p.m.)    |
| 7  | 4CA-2019-00035   | 1/7/19 (11:26 a.m.)    | 1/7/19 (4:07 p.m.)    |
| 8  | 4CA-2019-00038   | 1/7/19 (7:33 p.m.)     | 1/8/19 (9:38 a.m.)    |
| 9  | 4CA-2019-00041   | 1/8/19 (11:13 a.m.)    | 1/8/19 (4:12 p.m.)    |
| 10 | 4CA-2019-00056   | 1/8/19 (4:29 p.m.)     | 1/10/19 (9:34 a.m.)   |
| 11 | 4CA-2019-00076   | 1/11/19 (8:43 a.m.)    | 1/11/19 (12:06 p.m.)  |
| 12 | 4CA-2019-00078   | 1/11/19 (4:04 p.m.)    | 1/11/19 (6:00 p.m.)   |
| 13 | 4CA-2019-00085   | 1/14/19 (8:58 a.m.)    | 1/14/19 (12:12 p.m.)  |
| 14 | 4CA-2019-00089   | 1/15/19 (9:30 a.m.)    | 1/15/19 (12:09 p.m.)  |
| 15 | 4CA-2019-00101   | 1/16/19 (9:08 a.m.)    | 1/16/19 (6:26 p.m.)   |
| 16 | 4CA-2019-00102   | 1/16/19 (6:40 p.m.)    | 1/16/19 (6:50 p.m.)   |
| 17 | 4CA-2019-00104   | 1/17/19 (8:24 a.m.)    | 1/17/19 (12:20 p.m.)  |
| 18 | 4CA-2019-00105   | 1/17/19 (3:56 p.m.)    | 1/17/19 (10:14 p.m.)  |
| 19 | 4CA-2019-00107   | 1/18/19 (8:47 a.m.)    | 1/18/19 (12:44 p.m.)  |
| 20 | 4CA-2019-00140   | 1/18/19 (4:05 p.m.)    | 1/25/19 (9:59 a.m.)   |
| 21 | 4CA-2019-00142   | 1/25/19 (11:12 a.m.)   | 1/25/19 (12:19 p.m.)  |
| 22 | 4CA-2019-00150   | 1/28/19 (12:49 p.m.)   | 1/28/19 (3:04 p.m.)   |

Together, the twenty-two Complaints comprise 534 pages and 3,444 paragraphs in length. Furthermore, Mr. Laccinole served DCI with twenty-two duplicative sets of written discovery requests to go along with each Complaint.[3]

Mr. Laccinole's stated purpose for filing twenty-two Complaints was to increase his damages because the Fair Debt Collections Practices Act ("FDCPA") allows for a maximum of $1,000 in statutory damages per suit, not per violation.[4]

---

[3] By stipulation dated August 16, 2019, the parties agreed that the discovery requests served in the state court actions would be withdrawn without prejudice to serving discovery in this Court. (ECF No. 12.)

[4] Under the FDCPA, "[s]tatutory damages are subject to a cap of $1,000 per suit, 15 U.S.C. § 1692(a)(2)(A), no matter how many violations of the Act a given debt collector commits." *Smith v. Greystone Alliance, LLC*, 772 F.3d 448, 459 (7th Cir. 2014).

*See, e.g.*, ECF No. 1-7, ¶ 11. In his Complaints, Mr. Laccinole states: "Plaintiff deliberately pursues separate, successive actions for subsequent FDCPA violations (and violations of the RI FDCPA and [Florida Consumer Collection Practices Act]) in order to accrue maximum statutory damages." *Id.*

Mr. Laccinole did not attempt to serve DCI with any of his Complaints until February 25, 2019, despite the state court having generated summonses as early as January 2, 2019. (ECF No. 11-1.)

By a consent order in state district court, the parties consolidated the twenty-two Complaints. (ECF No. 10-2 at 7.) Mr. Laccinole apparently agreed to this consolidation as a procedural matter only, so that DCI could remove the Complaints to this Court (on the basis of federal question jurisdiction) as a single unit. (ECF No. 10-1 at 5.) The consolidation was made without prejudice to either party later moving to separate the matters for individual trials and without prejudice Mr. Laccinole's to seeking separate damages for each claim. (ECF No. 10-2 at 7.)

DCI now moves to dismiss the twenty-two Complaints on two theories. First, a dismissal without prejudice to Mr. Laccinole's ability to file a single, all-encompassing Complaint because in the aggregate the twenty-two Complaints fail to comply with Fed. R. Civ. P. 8(a)(2)'s requirement of a "short and plain statement." (ECF No. 9.) Alternatively, DCI moves under Fed. R. Civ. P. 12(b)(6) for partial dismissal with prejudice because, it argues, all of Mr. Laccinole's causes of action, with the exception of one FDCPA count, fail to state a claim upon which relief can be granted. *Id.*

## II. DISCUSSION

The Court must consider whether Mr. Laccinole's filing of twenty-two Complaints, arising from twenty-six calls from the same debt-collection entity over the course of approximately one month, all relating to an alleged debt, is an exercise in impermissible claim splitting. The doctrine precluding claim splitting is related to, but differs from, the doctrine of *res judicata*, or claim preclusion. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000); *see also Harstel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 986 (10th Cir. 2002) (surveying cases supporting the proposition that "claim splitting [is] an aspect of *res judicata*"). The difference is that the claim-splitting doctrine, unlike *res judicata*, applies where the second suit (or the twenty-one subsequent suits) has been filed before the first suit has reached a final judgment. *See* 18 Fed. Prac. & Proc. Juris. § 4406 (3d ed.) (discussing "principles of 'claim splitting' that are similar to claim preclusion, but that do not require a prior judgment.")

Both doctrines serve similar policies. "The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the 'comprehensive disposition of litigation.'" *Curtis*, 226 F.3d at 138 (quoting *Kerotest Mfg. Co v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). The claim-splitting doctrine, though, is "more concerned with the district court's comprehensive management of its docket, whereas *res judicata* focuses on protecting finality of judgments." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1214 (10th Cir. 2011)); *see also Macaulay v. Anas*, 321 F.3d 45, 49 (1st Cir. 2003) ("District

5

courts enjoy broad discretion in managing their dockets."); *Hedayati v. Perry Law Firm, APLC*, 2018 WL 3155186, at *3 (C.D. Cal. May 16, 2018), *report and recommendation adopted,* 2018 WL 3129803 (C.D. Cal. June 25, 2018) (holding that the claim-splitting doctrine is "rooted in the district court's broad discretion to control its own docket as well as the court's interests in judicial economy and efficiency").

"The doctrine [of claim splitting] is also meant to protect parties from 'the vexation of concurrent litigation over the same subject matter.'" *Curtis*, 226 F.3d at 138. *See also Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 328 (9th Cir. 1995) ("A main purpose behind the rule preventing claim splitting is 'to protect the defendant from being harassed by repetitive actions based on the same claim.'"). As such, a "litigant with multiple related claims must not separate, or split, the claims into multiple, successive cases, but must include in the first action all of the claims that fall within the Court's jurisdiction." *Perry v. Alexander*, 2017 WL 3084387, at *3 (D. Me. July 19, 2017) (citing *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1165 (1st Cir. 1991)).

Federal courts borrow from the *res judicata* test to determine if the claim-splitting doctrine applies. That is, whether the first suit, if it were final, would preclude the subsequent suits. *See, e.g., Vanover*, 857 F.3d at 841; *Katz*, 655 F.3d at 1218; *Adams v. California Dep't of HealthServs.*, 487 F.3d 684, 688-89 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008); *Curtis*, 226 F.3d at 139. The First Circuit employs the "transactional approach" to determine whether successive causes of action are the same as the first. *See Mass. Sch. of Law*

*at Andover, Inc., v. Am. Bar Ass'n,* 142 F.3d 26, 38 (1st Cir. 1998). "Under this approach, a cause of action is defined as a set of facts which can be characterized as a single transaction or series of related transactions." *Id.* The essential inquiry is whether "the causes of action arise out of a common nucleus of operative facts." *Id.* "In mounting this inquiry, we routinely ask 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'" *Id.* (quoting *Aunyx Corp. v. Canon U.S.A., Inc.*, 978 F.2d 3, 6 (1st Cir. 1992)). *See also Vanover*, 857 F.3d at 842 ("Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts."); *Curtis*, 226 F.3d at 139 (holding that claim splitting will apply if "the same or connected transactions are at issue and the same proof is needed to support the claims in both suits").

Upon determining a plaintiff has impermissibly split his or her claim, the "district court may exercise its discretion to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." *Adams*, 487 F.3d at 688.

Here, Mr. Laccinole's Complaints all arise from a common nucleus of alleged operative facts: that DCI wrongfully called him over the course of approximately one month to collect on a debt he did not owe, despite his having sent DCI cease and desist letters demanding it not call him. These facts clearly are "related in time, space,

7

origin, or motivation" and "form a convenient trial unit." *See Mass. Sch. of Law at Andover,* 142 F.3d at 38. Indeed, these matters certainly should be tried together rather than established and reestablished in twenty-two trials. Judicial economy demands no less.

It is of no moment that each Complaint alleges a different telephone call or calls. These subsequent calls are connected, related transactions, concerning a debt and efforts to collect that debt. Thus, all of Mr. Laccinole's Complaints are from the same "nucleus of operative facts." *See id.* Other federal courts have held similarly. For instance, in Vanover *v. NCO Fin. Sys., Inc.*, the plaintiff argued that debt-collection calls made to her in violation of the FDCPA and FCCPA during different time frames were distinct from claims she made against the same defendant in a previous lawsuit. 2015 WL 13540996, at *5 (M.D. Fla. Oct. 28, 2015), *aff'd, Vanover*, 857 F.3d 833 (11th Cir. 2017). The court, however, found that the plaintiff's second lawsuit was precluded by the claim-splitting doctrine as additional calls "merely constitute separate instances of the same course of conduct" and that while subsequent violations "could amount to additional violations of the law, these violations are not independent from the claims" in the first lawsuit. *Id.; see also Calvert v. Alessi & Koenig, LLC*, 2013 WL 3833053, at *1-2 (D. Nev. July 22, 2013) (holding that the claims-splitting doctrine applied to plaintiff's four separate complaints alleging FDCPA violations, despite each complaint addressing a separate communication, as they all arose from the same "transactional nucleus of facts").

Additionally, although Mr. Laccinole argues that he should be able to increase

8

his potential damages award by filing a separate Complaint for each alleged statutory violation, "[i]t is well settled that a plaintiff 'may not file duplicative complaints in order to expand their legal rights.'" *Vanover*, 857 F.3d at 841. Furthermore, with regard to his FDCPA claims, the statutory language does not support his gambit to sidestep that statute's restriction of a maximum $1,000 penalty per action filed. For example, the FDCPA provides that a court should consider "the frequency and persistence of noncompliance" when assessing a statutory damages award. 15 U.S.C. § 1692k(b)(1). This suggests that "Congress did not intend each noncompliance to be its own 'action,' … but rather wrote the statute with the understanding that multiple violations of the act would be addressed in a single action." *Raimondi v. McAllister & Associates, Inc.*, 50 F. Supp. 2d 825, 828-29 (N.D. Ill. 1999); *see also White v. Bruck*, 927 F. Supp. 1168, 1171 (W.D. Wis. 1996) (holding that the court's consideration of "frequency and persistence of noncompliance" indicates that "Congress envisioned situations in which debt collectors engage in multiple violations of the act"). Such reasoning is particularly strong in this matter where the calls DCI made were close in time, related to an alleged debt, and Mr. Laccinole did not serve DCI with his Complaints until about a month after DCI stopped calling him.

Mr. Laccinole also should be precluded from filing successive Complaints despite the fact that a subsequent DCI call occurred after the filing of the previous Complaint. While he states that could not have known that DCI would call him again after filing a given suit, this is belied by the fact that he asserts that he made multiple filings to increase his damages. *See, e.g.*, ECF No. 1-7, ¶ 11. In any event, the

circumstances of his filings, made almost daily over the course of a month, but not served until almost month after the last filing, demonstrates Mr. Laccinole has impermissibly attempted to circumvent the claim-splitting doctrine. Most importantly, that Mr. Laccinole received calls after a previous filing does not change the fact that all of the calls arose from the same "nucleus of operative facts." *See Mass. Sch. of Law at Andover*, 142 F.3d at 38. At this early stage, Mr. Laccinole should have amended his first Complaint to encompass the entire "series of related transactions" rather than split his claim. *See id.*

For these reasons, this matter is distinguishable from *Curtis*, 226 F.3d at 139, where the court, in a civil rights case, allowed a second complaint alleging actions occurring after the first complaint to proceed. Here, however, "[t]o rule otherwise would defeat the objective of the claim-splitting doctrine to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket." *Vanover*, 857 F.3d at 843.

## III. CONCLUSION

Because Mr. Laccinole's twenty-two successive Complaints violate the claim-splitting doctrine, the Court will exercise its broad discretion and dismiss all of his Complaints except the first Complaint[5] and allow Mr. Laccinole thirty (30) days from the date of this Order to amend the first Complaint to encompass his entire claim, should he so choose.

As such, DCI's Motion to Dismiss (ECF No. 9) is GRANTED IN PART to the

---

[5] The first Complaint is the one labeled in state court as 4CA-2019-00007.

extent that it seeks a single Complaint and DENIED IN PART, without prejudice, as to its remainder.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
4/14/2020